UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EBOREE LARKIN,

    Plaintiff,                                     Case No. 12-13917

v.                                                      Paul D. Borman
                                                       United States District Court
NEW CENTURY AUTO SALES INC.,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION CLAIMS

      This complaint arises from Plaintiff's claims that Defendant violated the Truth in Lending Act, the Michigan Motor Vehicle Sales Finance Act and the Michigan Credit Reform Act by failing to disclose and concealing certain information relating to the finance charges of a vehicle purchase.

      Plaintiff's complaint sets forth class action claims against Defendant claiming that it was Defendant's practice and policy to fail to disclose accurate finance charges, improperly characterize charges as part of the amount financed rather than the finance charge, and charge its customers annual percentage rates in excess of 25%. Plaintiff has not yet moved to certify the class pursuant to Fed. R. Civ. P. 23(c).

      On March 15, 2013, this Court referred Plaintiff's amended motions to compel production (Dkt. No. 11) and interrogatories (Dkt. No. 12) to Magistrate Judge Michael J. Hluchaniuk. (Dkt. No. 13). On May 31, 2013, Magistrate Judge Hluchaniuk issued a Bench Order regarding Plaintiff's Motions to Compel in which Defendant was ordered to file a motion addressing the merits of its affirmative defense that Plaintiff waived her right to a jury trial and

her right to participate in a class action by executing an arbitration agreement with Defendant.[1] (*See* Dkt. No. 27, Bench Order).  This action is currently stayed pending the resolution of this motion.  (Dkt. No. 38, Order granting Defendant's Motion to Stay).

Defendant filed this Motion to Dismiss Plaintiff's Class Action Claims on June 7, 2013. (Dkt. No. 28).  Plaintiff responded to this motion on July 9, 2013.  (Dkt. No. 34).  Defendant filed its reply on July 30, 2013.  (Dkt. No. 35).  A hearing was held on this matter on December 12, 2013.

For the reasons set forth below, the Court will DENY Defendant's Motion to Dismiss.

## I. BACKGROUND

On or about December 14, 2010, Plaintiff Eboree Larkin ("Plaintiff") visited New Century Auto Sales, Inc. ("Defendant") to purchase a vehicle.  (Compl. ¶ 9).  Plaintiff chose a 2001 Pontiac Sunfire.  (Compl. ¶ 9).  On December 14, 2010, Plaintiff executed a contract with Defendant entitled "retail purchase agreement" that set forth the terms under which she would purchase the vehicle.  (Compl. ¶¶ 10-11).  Plaintiff also executed a "retail installment sales contract" and a separate document entitled "Arbitration Agreement" with Defendant at that time. (Compl. ¶¶ 12-14; Def.'s Br. Ex. A, Arbitration Agreement).  Plaintiff paid Defendant $800.00

---

[1] Magistrate Judge Hluchaniuk noted that Defendant's failure to provide certain discovery was related to claims that the requests were not relevant based on Defendant's asserted defense that Plaintiff waived her right to a jury trial and to bring or participate in a class action lawsuit.  This defense was not raised as an objection to the discovery but rather as an affirmative defense to the Complaint.  Magistrate Judge Hluchaniuk noted that normally defenses to discovery requests that are not timely asserted are waived, however, "in this instance it is determined that the interests of justice are best served by requiring defendant to file, on or before June 7, 2013, a motion addressing the merits of its asserted defenses relating to waiver of class action participation and mandatory arbitration."  The pending motions to compel are being held in abeyance until the instant motion is resolved.  (Dkt. No. 27).

as a down payment on the vehicle at the time she executed the retail purchase agreement and the retail installment sale contract. (Compl. ¶¶ 12-14).

Plaintiff claims that on December 21, 2010, Defendant called her back to the dealership to sign a new retail purchase agreement and a new retail installment sale contract for the same vehicle which were backdated to December 14, 2010. (Compl. ¶¶ 15-17). In the new retail installment sale contract Plaintiff alleges that Defendant included a "discount fee" in the amount financed. (Compl. ¶ 18). Plaintiff contends Defendant did not disclose that the amount financed for the vehicle included the "discount fee" and that fee should have been disclosed as a finance charge. (Compl. ¶¶ 19-21). Plaintiff claims that because this fact was concealed from her Defendant failed to disclose that the true Annual Percentage Rate exceeded 25%. (Compl. ¶¶ 22-23).

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

3

the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570.

The Court notes that while Defendant has styled its pleading as a motion to dismiss arising under Fed. R. Civ. P. 12(b)(6), Defendant cites and relies upon the deposition of Plaintiff and also a manager that works for Defendant. The Court does not rely upon Plaintiff's deposition testimony or the manager's testimony in ruling on this motion to dismiss.

### III. ANALYSIS

Defendant argues that Plaintiff has waived her right to a jury trial and her right to bring (or participate) in a class action suit against Defendant because of the Arbitration Agreement she executed in connection with the sale of her vehicle that set forth waivers of these rights. The Arbitration Agreement states in relevant part:

> You and we agree that if any Dispute arises, whether or not we have accepted the Order of the completed sale of the Vehicle, either you or we may demand in writing that the Dispute be arbitrated, in which case you and we agree that you and we will immediately stay any court proceedings and the plaintiff will submit the Dispute to binding arbitration ... For any Dispute (or part of a Dispute) that is not subject to arbitration, you and we WAIVE THE RIGHTS TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN A CLASS ACTION relating in any way to a Dispute, WAIVE ANY RIGHT YOU OR WE MAY HAVE TO A TRIAL BY JURY and agree to have such matter tried by a court without a jury. You and/or we will continue to have the following rights: 1) right to file for bankruptcy in court; 2) right to enforce or dispute the security interest in the Vehicle, whether by repossession or through a court of law; 3) right to take legal action to enforce the arbitrator's decision; and 4) right to request that a court of law review whether the arbitrator exceeded its authority.
>
> A "Dispute" is any controversy or claim that relates in any way to the Vehicle, including, but not limited to, claims relating to the negotiation or breach of the Order and/or bill of sale for the Vehicle; the application for, negotiation of, and

> financing for the Vehicle (whether or not you complete the purchase of the Vehicle or obtain financing from any particular lender); any dispute relating to any service contract, extended warranty, or other product purchased by you or porvided to you at the time you purchased the vehicle or within 30 days thereafter, and any question regarding whether a matter is subject to arbitration under these provisions.

(Def.'s Br. Ex. A, Arbitration Agreement).

Plaintiff argues that as a matter of law no valid agreement to arbitrate was formed between the parties. Plaintiff contends that the Arbitration Agreement is unenforceable because it is a separate document from the retail installment sales contract and therefore runs afoul of a Michigan statute regarding vehicle retail installment sales contracts.

**A. Federal Arbitration Act**

Unlike most cases which contemplate the enforcement of an arbitration agreement, in the instant case, Defendant is not seeking to actually compel arbitration pursuant to the Arbitration Agreement. Rather, Defendant seeks to proceed with the litigation but have the Court enforce the Arbitration Agreement provisions which constitute waivers of Plaintiff's right to a jury trial and waiver of the right to institute or to be part of a class action suit.

The Federal Arbitration Act, 9 U.S.C. § 2, recognizes a "national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. Amer. Gen. Fin. Servs., Inc*. 507 F.3d 976, 972 (6th Cir. 2007) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

> While the courts must respect the liberal federal policy favoring arbitration agreements, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Thus, the underlying question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

*Seawright*, 507 F.3d at 972 (internal citations and quotations marks removed). The Sixth Circuit

has set forth the four threshold questions that a court must ask when evaluating whether to compel arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). The pertinent questions are: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if the plaintiff asserted any federal statutory claims whether Congress intended those claims to be nonarbitrable; and (4) if the court has determined that some claims are subject to arbitration, whether to stay the remainder of the case pending the outcome of that arbitration. *Id.* However, the initial inquiry for a court is whether a valid agreement to arbitrate exists. *Id.* at 393.

The Supreme Court has explained that because arbitration agreements are "fundamentally contracts" courts must evaluate the enforceability of such an agreement "according to the applicable state law of contract formation." *Seawright*, 507 F.3d at 972 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). Therefore, "[s]tate contract law ... governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio*, 340 F.3d at 393.

In the present action, there is no dispute over the application of Michigan law in determination of whether a valid arbitration agreement was formed.

### 1. Motor Vehicle Sales Finance Act

Pursuant to the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), Mich. Comp. Laws § 492.112(a), an installment sale contract "must be in writing, signed by both parties, and must 'contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold ...'" *Davis v. LaFontaine Motors, Inc.*, 271 Mich. App. 68, 78 (2006) (citing MVSFA, § 492.112(a)). Plaintiff argues that this "single document rule" works to

invalidate the stand alone Arbitration Agreement because that agreement was not contained in the retail installment sales contract between the parties. Plaintiff relies upon *Rugumbwa v. Betten Motor Sales*, 136 F. Supp. 2d 729 (W.D. Mich. 2001) for this proposition.

In *Rugumbwa*, the plaintiff claimed that the defendant car dealership failed to disclose a certain charge in the retail installment contract in violation of the Truth in Lending Act ("TILA") and other state statutes. In purchasing the vehicle, the plaintiff and the defendant dealership had executed five different documents: a handwritten sales order, a typewritten sales order, a retail installment contract, an application for title, and an odometer disclosure. *Rugumbwa*, at 731. Both of the sales agreements contained arbitration agreements, however, the retail installment sales agreement did not. *Id*. The defendant moved the court to compel arbitration pursuant to the sale orders. *Id*. The court denied defendant's attempt to enforce the arbitration agreement finding that there was no valid agreement to arbitrate. *Id*. The *Rugumbwa* court reasoned that because the MVSFA and another Michigan statute "envision the execution of a single, comprehensive installment contract containing all of the agreements made by the parties with regard to the subject matter of the retail installment sale" and the retail installment sales contract did not contain the arbitration clause, the arbitration clause located in the sale orders was not enforceable. *Id*. at 733.

In holding the arbitration clause could not be read together with the retail installment sales contract, the district court relied upon *Lozada v. Dale Baker Oldsmobile, Inc*., 197 F.R.D. 321 (W.D. Mich. 2000), which held that an addendum to a vehicle retail installment sales contract was not enforceable as a matter of law where the MVSFA and another Michigan statute required "all of the agreement between the parties to be included in a single installment sales

contract." *Rugumbwa*, 136 F. Supp.2d at 733 (citing *Lozada*, 197 F.R.D. at 339).[2]

### 2. Do Plaintiff's Claims Implicate the Retail Installment Sales Contract

Defendant argues in its reply brief that its stand alone arbitration agreement was validly formed and therefore enforceable because the single document rule under MVSFA applies only to disputes arising directly from a retail installment sales contracts. (Def.'s Reply at 2). To this end, Defendant relies upon *Pack v. Damon Corp*, 320 F. Supp.2d 545 (E.D. Mich. 2004), *rev'd in part on other grounds*, 434 F.3d 810 (6th Cir. 2006).

In *Pack*, a plaintiff brought an action against a dealership and manufacturer alleging breach of express and implied warranties, breach of express and implied warranties under the federal Magnuson-Moss Warranty Act, as well as breach of contract and violations of other state laws relating to his purchase of a recreational vehicle. *Id*. at 547-48. The plaintiff relied upon *Rugumbwa* in opposing the defendants motion to compel arbitration and argued that the arbitration clause should be unenforceable where it violated the MVSFA and was not contained in the retail installment sales contract. *Id*. at 553-556.

In declining to find the arbitration clause unenforceable, Judge George Caram Steeh differentiated the facts in *Pack* from those in *Rugumbwa* and *Lozada*, stating:

> *Rugumbwa* and *Lozada* stand for the more narrow proposition that claims alleged with regard to the subject matter of a retail installment contact are subject only to those agreements expressly set forth in the installment contract. Unlike the *Rugumbwa* and *Lozada* plaintiffs, plaintiff Pack is not challenging the terms of this retail installment contract, but [the dealer's] warranties and performance under the terms of the ... sales agreement. [The dealer] does not seek arbitration of

---

[2] In *Lozada*, the plaintiff alleged that the defendant dealership failed to provide a copy of the retail installment sales contracts at the time the contracts were executed in violation of TILA, MVSFA as well as Michigan Consumers Protection Act and Michigan Vehicle Installment Sales Contracts Act. *Lozada*, 197 F.R.D. at 321.

> the claims arising under the ... retail installment agreement; plaintiff does not allege claims regarding the subject matter of the retail installment contract. The *Rugumbwa* court itself distinguished between claims with regard to a retail installment contract, and claims with regard to a sales contract [.]

*Pack*, at 545, *see also Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 300, 305-06 (E.D. Mich. 2004) (J., Edmunds) (relying upon the reasoning in *Pack* to find that an arbitration clause did not violate the MVSFA or the MVISCA when the plaintiff's claims did not relate to the retail installment sales contract.).

Defendant attempts to argue that Plaintiff's claims do not implicate the retail installment sales contract but rather relate to the vehicle pricing practices of the Defendant because "Plaintiff is claiming that the price of her vehicle specifically was increased to account for the sale of her note to Gateway Financial Services." (Def.'s Reply at 3). The Court finds that this argument is unavailing. The claims asserted in *Pack* were state and federal warranty claims as well claims of breach of contract, rescission and violations of Michigan's Consumer Protection Act - all of those claims were based on plaintiff's allegations that his RV needed nine structural and suspension repairs and was out of service for 168 days. *Pack*, 320 F. Supp. 2d at 548. Those claims were completely unrelated to any of the terms set forth in the retail installment sales contract. The facts and allegations in the present case, however, are analogous to those in *Rugumbwa*. In *Rugumbwa* the plaintiff alleged that the dealership made false representations regarding the cost of a service contract that was detailed in the retail installment sales contract and then withheld a portion of the price of the service contract which it failed to disclose in violation of TILA. In the present case, Plaintiff alleges that the Defendant violated TILA and other statutes because it did not properly disclose the true amount financed, the true finance charge, or the true APR in the retail installment sales contract and that Defendant concealed

9

those facts from its customers. (Compl. ¶ 24).

At the hearing, Defendant went further and argued that whether the MVSFA applies to invalidate the stand alone Arbitration Agreement hinges not on whether Plaintiff's claims challenge or relate to the terms of the retail installment contract but hinge on whether Plaintiff is seeking to enforce the terms of the retail installment contract. For this proposition, Defendant relies upon one sentence in *Harnden v. Ford Motor Company*. *See* 408 F. Supp. 2d at 306.

In *Harnden*, the plaintiff brought an action alleging the defendants sold him a faulty RV, claiming: breach of contract, state law claims of breach of implied and express warranties, breach of implied warranties and written warranty under the Magnuson-Moss Warranty Act, revocation of acceptance, and violations of the Michigan Motor Vehicle Service and Repair Act and the Michigan Consumers Protection Act. *Id.* at 303. The defendants moved to compel arbitration based on arbitration agreements set forth in a signed warranty registration and also a separate unsigned form entitled "Informal Dispute Resolution Agreement". *Id.* at 304. The plaintiff argued, among other things, that the arbitration agreements in the warranty registration and the stand alone agreement should not be enforced because they were not part of the retail installment sales contract and therefore violated the MVSFA and the MVISCA.

The *Harnden* court examined *Rugumbwa* and its progeny and ultimately relied upon *Pack* in holding that the MVSFA did not mandate that the arbitration clauses be invalidated.[3]

---

[3] The *Harnden* court only examined the non-warranty claims with regard to these arguments because the court went on to hold that the arbitration agreement was not enforceable as to the warranty claims because the warranty agreement was not in one single document in violation of the Magnuson-Moss Warranty Act. *Harnden*, 408 F. Supp. 2d at 307-08. The court then dismissed the warranty claims on summary judgment because the defendants had disclaimed all warranties. *Id.* at 308.

408 F. Supp. 2d at 305-06.  In so finding, the *Harnden* court stated "[a]s in *Pack*, Plaintiff is not suing to enforce the installment contract.  The fact that the arbitration agreement appears in a separate document from the installment contract does not prevent the Court from enforcing the arbitration agreement."[4]  *Id*. at 306.

In the present action, Defendant points to this one sentence to claim that a plaintiff must be seeking to enforce the retail installment sales contract (and not merely asserting claims that arise from or relate to subject of the contract) for the MVSFA to bar a separate stand alone agreement.  This argument is misleading in that it ignores the rest of the court's analysis.  Indeed, the *Harnden* court explicitly recognized that *Rugumbwa* and *Lozada* "stand for the more narrow proposition that claims alleged <u>with regard to the subject matter of a retail installment</u> contact are subject only to those agreements expressly set forth in the installment contract."  *Id*. (quoting *Pack*, 320F. Supp. 2d at 554-55) (emphasis added)).  The *Harnden* court further noted that "[i]n *Pack*, the plaintiff challenged the seller's performance of warranties in the purchase agreement, not in the retail installment contract.  Therefore, the arbitration clause did not violate the MVISCA or the MVSFA."  *Id*. at 306 (internal citation *Pack* omitted.).  The *Harnden* opinion appears to reference the fact that in *Pack* the warranties being challenged were not set forth in the retail installment contract and therefore, the party was not suing to "enforce" the installment contract.

In the present action, similar to *Rugumbwa*, Plaintiff alleges TILA violations based on

---

[4]The court went on to find that because the plaintiff asserted the signature on the warranty document was forged there were factual issues necessitating further briefing and discovery before the court could determine whether plaintiff could be forced to arbitrate the non-warranty claims.

non-disclosures in the retail installment contract.[5] Therefore, like *Rugumbwa*, Plaintiff's claims challenge the subject matter of the retail installment sales contract at issue. As a result, the stand alone Arbitration Agreement is unenforceable as a matter of law because it is a stand alone document and not part of the retail installment sales contract as required pursuant to MVSFA.

As the Court finds that the Arbitration Agreement was not validly formed under Michigan law, the Court need not address any of the threshold questions regarding whether to compel arbitration.

**B.    Preemption**

Defendant argues briefly, generally and without any specific case law support that the enforcement of the MVSFA conflicts with the FAA. Defendant contends that the parties intended to be bound by the arbitration agreement and to find otherwise would "conflict with the federal preference given to arbitration." (Def.'s Reply at 5).

The Supreme Court has explained that "The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law ..." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). Indeed, the final phrase of § 2 of the FAA allows an arbitration agreement to be found unenforceable "upon such grounds as exist at law or in equity for the revocation of any

---

[5] The Court notes that at this stage in the litigation it must accept the facts alleged in Plaintiff's complaint as true. *See DirectTV, Inc.*, 487 F.3d at 476. The Court's holding does not foreclose the possibility that discovery may raise genuine issues of material fact regarding whether Plaintiff's claims actually challenge the subject matter of the retail installment sales contract.

contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2010) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The Supreme Court has also explained that a state law will be preempted by the FAA where the state law rule "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id*. at 1747-48. In summary,

> the Supreme Court has held that the FAA preempts state laws and polices regarding arbitration. State contract law, however, governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses.

*Fazio*, 340 F.3d at 392-93 (citation omitted).

In the present case, Defendant has failed to explain how the MVSFA conflicts with the FAA. It is clear that the statute itself applies to all contracts generally. *See Lozada*, 197 F.R.D. 321 (applying MVSFA to find a separate addendum to a retail sales installment contract was unenforceable because it was not contained in the contract); *Davis v. LaFontaine Motors, Inc.*, 271 Mich. App. 68 (following the reasoning in *Pack* and holding that a separate warranty disclaimer did not violate the MVSFA and other Michigan statutes where the claims alleged did not arise under the retail installment sales contract). Further, there is no language in the MVSFA that is directed at agreements to arbitrate specifically.

Defendant's argument that the Court should find the arbitration clause enforceable solely because of the federal preference given to arbitration ignores the fact that the first inquiry a court must make is whether, pursuant to state law, an agreement to arbitrate was ever formed. Here,

13

where a plaintiff seeks to challenge the subject matter of the retail installment sales contract, the MVSFA operates to invalidate the stand alone Arbitration Agreement. Therefore it follows that where there is no valid arbitration agreement, there can be no federal preference to compel its enforcement. As a result, the Court finds, at this stage of the proceedings, that the MVSFA is not preempted by the FAA.

## IV. CONCLUSION

For these reasons, the Court DENIES Defendant's Motion to Dismiss Plaintiff's Class Action Claims. (Dkt. No. 28).

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: January 3, 2014

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 3, 2014.

s/Deborah Tofil
Case Manager